UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PORTA STOR, INC. et al.,

    Plaintiffs,

v.                                            CASE NO: 8:07-cv-1291-T-23TBM

PODS, INC.,

    Defendant.

_____/

**ORDER**

Porta Stor, Inc., ("Porta Stor") and Larry S. Hyman as Chapter 7 trustee for the bankruptcy estate of Christopher Edward Neuguth[1] (collectively, the "plaintiffs") sue PODS, Inc., ("PODS") in count one for "bad faith in obtaining temporary and preliminary injunction" and in count two for "unjust enrichment in obtaining a wrongful injunction." The plaintiffs allege (1) bad faith conduct by PODS, PODS's expert, and PODS's counsel in obtaining a temporary restraining order ("TRO") and preliminary injunction in PODS, Inc., v. Porta Stor, Inc., and Christopher E. Neuguth, No. 8:04-cv-2101-MAP (M.D. Fla.) (the "related action") and (2) unjust enrichment to PODS as a result of the TRO and injunction in the related action. PODS moves (Doc. 10) to dismiss the amended complaint for failure to state a claim, and the plaintiffs respond (Doc. 12) in

---

[1] See In re Christopher E. Neuguth, No. 8:05-12146 (M.D. Fla.).

opposition. Additionally, pursuant to Rule 11, Federal Rules of Civil Procedure, PODS moves (Doc. 14) for sanctions against the plaintiffs.

PODS and Porta Stor deliver and transport portable storage containers. After delivery and loading, the customer either uses the container for on-site storage or requests transportation of the container to warehouse storage or another location. PODS is the assignee of U.S. patent No. 6,071,062 (the "'062 patent"), which discloses a method and apparatus for lifting, handling, and transporting portable storage containers. Owned by Christopher Edward Neuguth ("Neuguth"), Porta Stor uses an apparatus (the "accused device") to lift, handle, and transport Porta Stor's portable storage containers.

A May 17, 2004, letter from PODS vice-president Jaquelyn Consentino-Georges to Neuguth (Dkt.[2] 1-3) informed Neuguth of PODS's opinion that the Porta Stor system for lifting and handling storage containers infringed the '061 patent and demanded that Porta Stor immediately cease and desist from manufacturing, selling or offering for sale, using, or distributing the Porta Stor system. A second cease and desist letter (Dkt. 1-3) from PODS's counsel Ann S. Mason ("Mason") to Porta Stor's counsel Herbert Larson ("Larson") followed on August 12, 2004. Mason informed Larson that the PODS's experts had completed their analysis and had concluded that Porta Stor's apparatus and method infringed claims one and twenty-nine of the '062 patent. Accordingly, Mason (a) demanded that Porta Stor immediately cease and desist from manufacturing,

---

[2] Docket entries in the related action are referred to in this order as "Dkt. __."

selling, or offering for sale the Porta Stor apparatus and method; (b) demanded confirmation by August 20, 2004, of Porta Stor's compliance; and (c) informed Larson that, "[i]f your client does not comply with these demands . . . we will seek preliminary and permanent injunctive relief . . . ."

On September 16, 2004, PODS sued Porta Stor and Neuguth for patent infringement and moved for a TRO and preliminary injunction. PODS alleged that the Porta Stor apparatus infringed claims one and twenty-nine of the '062 patent. Although PODS admitted that the accused device did not read literally on two elements (elements 2 and 8) of claim one, PODS argued that the accused device was substantially similar to the PODS apparatus as to both elements and therefore infringed claim one under the doctrine of equivalents.[3] PODS argued that the accused device literally infringed claim twenty-nine. PODS further argued (Dkt. 3 at 12) for only a nominal bond because PODS showed a high probability of success on the merits. Finally, PODS stated that Larson had informed PODS that Larson no longer represented Porta Stor and that a TRO would prevent irreparable harm "pending [Porta Stor's] procurement of counsel"[4] and a preliminary injunction hearing.

---

[3] See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997) (Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."); Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 732 (2002) ("The scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described.").

[4] Doc. 5-3 ¶ 17; Dkt. 2-1 ¶ 17.

If a patentee narrows a claim element by amendment during the prosecution of the patent application, prosecution history estoppel presumptively bars the patentee from arguing infringement under the doctrine of equivalents as to that element.[5] However, PODS maintained the inapplicability of the bar because PODS "did not amend or 'give up' anything in its patent application during the prosecution history" and "there was no amendment to the patent application relating to element 2 or element 8 of Claim 1 which would prevent [PODS] from claiming the doctrine of equivalents."[6]  Additionally, PODS attached a declaration of Dr. Lee Swanger ("Swanger") stating that his review of the entire file wrapper of the '062 patent revealed a "very clean" prosecution history that supplied "no basis for any estoppel of any claim element of Claim 1, and no limitation on the breadth of this claim and its claim elements that the patentee may assert under the Doctrine of Equivalents."[7]  Similarly, Swanger stated that the accused device literally infringed claim twenty-nine and that his review of the entire file wrapper revealed a "very clean" prosecution history that supplied "no basis for any estoppel of any claim element of Claim [twenty-nine], and no limitation on the breadth of this claim and its claim elements that the patentee may assert under the Doctrine of Equivalents."[8]

A September 17, 2004, order (Dkt. 9) granted PODS's motion for a TRO; enjoined Porta Stor and Neuguth from (among other things) selling, marketing, or

---

[5] Festo, 535 U.S. at 739-40.

[6] Doc. 5-3 at 21; Dkt. 3 at 8.

[7] Doc. 5-3 at 54 (September 7, 2004, "Declaration of Lee A. Swanger, Ph.D., P.E. ¶ 8); Dkt. 6 ¶ 8.

[8] Doc. 5-3 at 58; Dkt. 6 ¶ 9.

- 4 -

advertising "their method and device for lifting, handling, and transporting a storage container" pending the preliminary injunction hearing;[9] and ordered PODS to post a $5,000 bond by September 22, 2004.  On October 4, 2004, PODS (Dkt. 18) posted the bond (the "TRO bond").

Also on September 17, 2004, PODS's motion for a preliminary injunction was referred (Doc. 10) to the magistrate judge for a report and recommendation, and the magistrate judge scheduled a hearing for September 27, 2004.  Porta Stor states (Dkt. 36 at 1) that Porta Stor was not notified of the application for the TRO until September 23, 2004, when "notice of the commencement of the suit was . . . served."[10]

Owing to a hurricane (see Dkt. 36 at 2; Dkt. 35 at 4), the preliminary injunction hearing scheduled for September 27, 2004, was cancelled and re-scheduled for October 5, 2004.  Porta Stor's counsel Edward Dutkiewicz ("Dutkiewicz") states that because (1) PODS's notice of the re-scheduled hearing, like PODS's notice (see Dkt. 13) for the cancelled hearing, was styled (see Dkt. 17) a notice of hearing on a

---

[9] A second September 17, 2004, order (Dkt. 10) referred PODS's motion for a preliminary injunction to the magistrate judge and stated that the TRO "shall continue until a ruling on the motion for a preliminary injunction, or a ruling on any motion to dissolve the [TRO]."

[10] PODS's September 21, 2004, "Notice of Hearing on Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction" states (Dkt. 13 at 2) that the notice was served on Porta Stor's registered agent, Spiegel and Utrera, P.A., and on Neuguth "via First Class U.S. Mail."  Local Rule 4.05(b)(5) provides that a successful TRO applicant shall "obtain immediate service of process upon the defendants, or parties enjoined, pursuant to Rule 4, Fed. R. Civ. P." and that "the papers so served must also include a notice of the hearing time fixed by the court for consideration of the application for preliminary injunction."  However, the docket discloses no return of service or proof of service of process pursuant to Rule 4.  PODS notes (Dkt. 39) that the TRO has a notation requiring copies to "[a]ll parties and counsel of record."  However, the docket includes no notation that the order was mailed to Porta Stor or Neuguth.  Porta Stor's counsel Edward Dutkiewicz filed a notice of appearance (Dkt. 20) on October 7, 2004.

- 5 -

"motion for a temporary restraining order and preliminary injunction" and (2) Dutkiewicz had not reviewed any other court documents in the case, Dutkiewicz mistakenly assumed that the purpose of the noticed hearing was to decide the motion for a TRO–and hence that no TRO was in effect.  Dutkiewicz further states that on the day of the hearing, October 5, 2004, Neuguth gave Dutkiewicz a file containing the TRO, but Dutkiewicz did not discover the TRO in the file until after the hearing.  Finally, Dutkiewicz states that Neuguth had previously assured him that no complaint had yet been served[11]–or even filed[12]–in the action.  In short, according to Porta Stor, both Porta Stor and Dutkiewicz were unaware of the existence of the TRO before the conclusion[13] of the October 5, 2004, hearing.

Porta Stor submitted no counter-affidavits and filed no memorandum of law in opposition to PODS's motion.  However, at the October 5, 2004, hearing, Porta Stor denied that the accused device infringed claims one and twenty-nine of the '062 patent and argued that the accused device deviated substantially from the claims.

---

[11]  See supra note 10.

[12]  PODS's complaint was filed (Dkt. 1) on September 16, 2004.  The order referring the motion for a preliminary injunction to the magistrate judge (Doc. 10) directed the parties "to confer and attempt to resolve this dispute without further court intervention or through alternative dispute resolution within ten days of service of this order, and file a response with the court," and on September 29, 2004, PODS filed (Doc. 16) a notice of compliance stating that PODS's counsel had conferred with the parties on September 24, 2004.

[13]  The audio recording reveals that Magistrate Judge Mark A. Pizzo opened the October 5, 2004, hearing by stating, "We have for this morning a hearing on a motion for preliminary injunction in the case of PODS, Inc., a Florida corporation, v. Porta Stor, Inc., a Florida corporation, and Christopher Neuguth, individually, as defendants . . . . and Judge Kovachevich has referred to me the plaintiff's motion for preliminary injunction which is referred to at Doc. 2 of the court file . . . ."

On October 20, 2004, the magistrate judge issued a report and recommendation (Dkt. 24) that relied heavily on Swanger's unchallenged declaration. After noting that PODS needed to establish only a likelihood of success in proving infringement of one of the two claims (claim one or claim twenty-nine), the magistrate judge found that Swanger's opinion strongly supported PODS's contentions that (1) from the perspective of one reasonably skilled in the pertinent art, the differences between the accused device and elements 2 and 8 of claim one were insubstantial and therefore the accused device infringed claim one under the doctrine of equivalents, and (2) the accused device literally infringed claim twenty-nine. Accordingly, the magistrate judge concluded that PODS was likely to prevail on its infringement claims and recommended granting the motion.

A November 10, 2004, order (Dkt. 29) adopted the magistrate judge's report and recommendation and enjoined Porta Stor and Neuguth from (among other things) selling, marketing, or advertising "their method and apparatus for lifting, handling, and transporting a storage container." PODS apparently was not required to post a new or larger bond.

On November 22, 2004, Porta Stor filed objections (Dkt. 36) to the magistrate judge's report and recommendation. Porta Stor explained (Dkt. 35 at 2) the untimeliness of the objections as a consequence of a problem with transmission of electronic notice to counsel's e-mail account. Dutkiewicz stated (Dkt. 36 at 3) that he was unaware of the report and recommendation until November 10, 2004, and unaware that Porta Stor was required to object to the report and recommendation within ten days

of service[14] until nine days later, on November 19, 2004, when he examined the docket.[15]

Porta Stor argued in objections that the magistrate judge erred in relying on the Swanger declaration because the Swanger declaration was inadmissible hearsay and Porta Stor had no opportunity to cross-examine Swanger.[16] Porta Stor admitted failing to object to consideration of the Swanger declaration but explained (Dkt. 36 at 7) the failure as a consequence of Porta Stor's failure to "appreciate that the hearing was, in fact, a preliminary injunction hearing."[17] Additionally, Porta Stor stated (Dkt. 36 at 8) that inadequate notice caused Porta Stor's failure to secure expert testimony to oppose

---

[14] But see Dkt. 24 (the magistrate judge's October 24, 2004, report and recommendation) (stating that "[f]ailure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice."); Local Rule 6.02(a) (providing that any party may file objections to a magistrate judge's report and recommendation within ten days of service); Fed. R. Civ. P. 72(b) ("Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); 28 U.S.C.A. § 636(b)(1)(C) ("Within ten days after being served with a copy, any party may serve and file written objections to [a magistrate judge's] proposed findings and recommendations as provided by rules of court.").

[15] On November 12, 2004, PODS sent Porta Stor's counsel a facsimile of the November 10, 2004, order adopting the magistrate judge's report and recommendation. See Dkt. 48-2 at 8-9.

[16] Porta Stor apparently believed (see Doc. 36 at 7) that affidavit testimony is inadmissible in a preliminary injunction hearing. But see Local Rule 4.06(b)(2) ("Service of all papers and affidavits upon which the moving party intends to rely must be made at least five (5) full days prior to the [preliminary injunction] hearing."); Local Rule 4.06(b)(3) ("The party or parties opposing the application must file with the Clerk's office and deliver to the moving party, all counter or opposing affidavits . . . not later than the close of business on the day preceding the day of the hearing.").

[17] See supra note 13.

- 8 -

the Swanger declaration.[18]  Finally, Porta Stor argued that (1) the apparatus defined in claim one differed substantially from the accused device and therefore application of the doctrine of equivalents to claim one was erroneous and (2) the magistrate judge's conclusion that the accused device literally infringed claim twenty-nine resulted from the erroneous admission of the Swanger declaration.

On December 3, 2004, Porta Stor moved (Dkt. 42) to dissolve the preliminary injunction, and on December 6, 2004, the district judge referred (Dkt. 44) the motion to the magistrate judge for a report and recommendation.  In support of the motion, Porta Stor relied on an expert report (Dkt. 42-2) by Dr. Elliot L. Stern ("Stern"), who finds no infringement of claims one or twenty-nine either literally or under the doctrine of equivalents.

After the parties agreed to engage in arbitration proceedings, the magistrate judge denied the motion without prejudice.  Following the arbitration, on May 11, 2005, Porta Stor renewed (Dkt. 59) the motion to dissolve the injunction and again argued that the court improperly relied on Swanger's opinion.  Additionally, Porta Stor asserted (apparently for the first time[19]) that the representations of PODS, Mason, and Swanger regarding the file wrapper were unreliable.

---

[18]  The audio recording of a December 13, 2004, hearing reveals that the magistrate judge characterized Porta Stor's arguments as to the alleged inadequacy of the notice of the October 5, 2004, hearing and the existence of the TRO as evidencing a "complete lack of responsibility for taking notice of the court's rulings."

[19]  See Doc. 16 at 1.

- 9 -

First, Porta Stor argued that Swanger's representation (i.e., that the file wrapper of the '062 patent disclosed neither a basis for estoppel of any element of claim one and claim twenty-nine nor a limitation on the breadth of the claims that the patentee could assert under the doctrine of equivalents) amounted to a legal conclusion that was or might be unreliable because PODS failed to demonstrate that Swanger had any expertise or experience in analyzing the significance of amendments during patent prosecution.

Second, Porta Stor argued that the Mason and Swanger representations as to the "allegedly innocuous or non-existent amendments" (Dkt. 59 at 7) in the file wrapper were "questionable" and "in direct conflict with the record" (Dkt. 59 at 6, 10). To support this argument, Porta Stor attached a portion of the file wrapper including:

> (1) a September 20, 1999, United States Patent and Trademark Office ("PTO") communication (Doc. 59-2) (the "office action") in which the patent examiner rejected claim one as unpatentable under 35 U.S.C. § 103(a) in view of its obviousness in light of the Dousset prior art reference, U.S. Patent No. 3,541,598; and
>
> (2) a November 23, 1999, response (Doc. 59-3) in which the patentee (a) amended certain claims (including claim one), (b) traversed the examiner's rejection of certain claims (including claim one) and distinguished the PODS apparatus on the ground that "the Dousset reference clearly lacks the teachings of the [PODS apparatus's] singular rectangular-shaped frame," and (c) argued that although the proposed amendments increased the specificity and clarity of the claims, the amendments were not required by the examiner's rejection and therefore "no estoppel has been created by these amendments."

Featuring this new information, Porta Stor sought reconsideration and dissolution of the injunction.

A June 13, 2005, order[20] (Dkt. 70) denied the motion to dissolve. With respect to the new information that Porta Stor offered (the office action and the patentee's response), the order concluded that with due diligence Porta Stor could have presented the information before issuance of the preliminary injunction. Additionally, the order observed that Porta Stor's arguments failed to address claim twenty-nine of the '062 patent. Because the magistrate judge's report and recommendation and the district judge's adoption found that PODS likely would prove infringement of both claim one and claim twenty-nine because PODS needed to establish a likelihood of success in proving infringement of only one of the two claims to warrant preliminary injunction, the order concluded (Dkt. 70 at 2) that Porta Stor's "factual and legal arguments have little relevance."

The Court of Appeals for the Federal Circuit affirmed.[21] First, the Federal Circuit found that Porta Stor failed to demonstrate that the magistrate was wrong to conclude that the new information submitted in support of Porta Stor's motion (the office action and the patentee's response) could with due diligence have been presented before issuance of the preliminary injunction.[22] Second, "[b]ecause Porta Stor's motion to dissolve the preliminary injunction was expressly limited to claim 1, and because we have held that in cases involving multiple patent claims a patentee seeking a

---

[20] The parties consented (Dkt. 117) to have the entire proceeding conducted before the magistrate judge. See 28 U.S.C. § 636(c)(1).

[21] PODS, Inc. v. Porta Stor, Inc., 177 Fed. Appx. 73 (Fed. Cir. 2006).

[22] PODS, Inc. v. Porta Stor, Inc., 177 Fed. Appx. at 75.

- 11 -

preliminary injunction need only demonstrate that it will likely prove infringement of one of those claims, the magistrate judge was correct in holding that Porta Stor's motion did not present sufficient grounds for dissolving the preliminary injunction."[23]

On or around May 18, 2005, Dutkiewicz submitted on his own behalf a complaint (Doc. 15-4) to The Florida Bar about Mason's conduct. The complaint alleges that, by Mason's representations in the application for the TRO, Mason failed to fulfill and "intentionally avoided" her duty under Rule 4-3.3, R. Regulating Fla. Bar. Rule 4-3.3(d) provides that "[i]n an ex parte proceeding a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." The complaint alleges (1) that Mason was aware that any amendments to the '062 patent by the patentee were important to the outcome of PODS's TRO application; (2) that, if the court had been aware of the amendments, the amendments would have raised a serious question as to PODS's rights under the patent–a question which "alone, would have been sufficient to defeat" the TRO application; and (3) that, instead of acknowledging the amendments, Mason "made affirmative statements to the court regarding [the prosecution history] that, on their face, told the court that no significant amendments were made, when, in fact, significant amendments had been made."[24]

---

[23] PODS, Inc. v. Porta Stor, Inc., 177 Fed. Appx. at 75 (citation omitted).

[24] See also Dkt. 174 at 3 (stating that Dutkiewicz also filed a complaint with The Florida Bar against Dennis LaPointe, the attorney who drafted the '062 patent application).

On or about March 2, 2006, the grievance committee handling the complaint issued a "Letter Report of No Probable Cause" (Doc. 15-5), which states that (1) the committee concluded that "[Mason's] arguments [to the court] were not misleading and her communication was not ex parte," and (2) the committee "gave great weight to Magistrate [Judge] Pizzo's findings and found no evidence to support [Dutkiewicz's] conclusions."

Following a June 5, 2006, claims construction order,[25] a jury trial began on June 12, 2006. At the close of the evidence, the district court granted judgment as a matter of law in favor of PODS on PODS's patent and copyright infringement claims. The court found that the accused device infringed claim one (as well as another claim, thirty-two) under the doctrine of equivalents and infringed claim twenty-nine literally. Also, the court found that Porta Stor and Neuguth infringed PODS's copyright by copying a PODS rental agreement.

Resolving the balance of the case, the jury (a) found that Porta Stor willfully infringed the '062 patent and awarded $1500 in damages; (b) found that Porta Stor and Neuguth did not willfully infringe PODS's copyright and awarded no copyright damages; (c) found that Porta Stor willfully violated the Lanham Act, 15 U.S.C. § 1125, but awarded only one dollar; (d) found that Porta Stor willfully violated the Florida common law of unfair competition and awarded $15,000; and (e) found that Porta Stor willfully violated the Florida Deceptive and Unfair Trade Practices Act but awarded no damages

---

[25] See PODS, Inc. v. Porta Stor, Inc., No. 04-CV-2101, 2006 WL 1540347 (M.D. Fla. June 5, 2006).

on the claim. A June 16, 2006, order (Doc. 172) awarded PODS $750 for statutory copyright damages and directed entry of judgment ordering Porta Stor and Neuguth to pay PODS a total of $17,251.

A June 30, 2006, order (Dkt. 182) granted PODS's motion to dissolve the TRO bond. An August 25, 2006, order doubled the jury's award for patent infringement pursuant to 35 U.S.C. § 284;[26] a second August 25, 2006, order (Dkt. 209) permanently enjoined Porta Stor and Neuguth from infringing the '062 patent; and a third[27] awarded attorneys' fees and expenses to PODS on the patent infringement claim pursuant to 35 U.S.C. § 285.

The Federal Circuit disagreed with the district court's claims construction order and reversed the judgment of patent infringement.[28] First, relying in part on the arguments in the patentee's November 23, 1999, response distinguishing the '062 patent from the Dousset prior art reference, the Federal Circuit found that claim twenty-nine was limited to a method employing a four-sided, rectangular carrier frame, and therefore the accused device, which used an open, U-shaped frame, did not literally infringe claim twenty-nine.[29] Second, the Federal Circuit found that owing to the same arguments in the November 23, 1999, and for substantially the same reasons urged in

---

[26] See PODS, Inc. v. Porta Stor, Inc., No. 8:04-cv-2101, 2006 WL 2473636, 1 (M.D. Fla. Aug. 25, 2006).

[27] See PODS, Inc. v. Porta Stor Inc., No. 8:04-cv-2101, 2006 WL 2473627, *2 (M.D. Fla. Aug. 25, 2006).

[28] PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1371 (Fed. Cir. 2007).

[29] PODS, Inc. v. Porta Stor, Inc., 484 F.3d at 1366-67.

Porta Stor's May 11, 2005, motion–that is, because PODS surrendered by amendment any claim to a carrier frame that was not four-sided–prosecution history estoppel barred PODS from asserting infringement of claim one under the doctrine of equivalents.[30] Accordingly, the Federal Circuit directed the district court to enter judgment of non-infringement in favor of Porta Stor.[31]  Finally, the Federal Circuit (a) found that the only evidence at trial regarding PODS's joint ownership of the copyright in the PODS rental agreement was inconsistent, (b) reversed the judgment of copyright infringement, and (c) remanded the action for a new trial limited to copyright ownership.[32]

On remand, a July 20, 2007, order (Dkt. 230) vacated the judgment of patent and copyright infringement and the orders imposing a permanent injunction and awarding attorneys' fees.  Additionally, the order granted PODS's unopposed motion to dismiss the copyright claim.  This lawsuit followed on July 24, 2007.[33]

In this action, the plaintiffs allege (1) that Swanger's representations in the Swanger declaration were grossly negligent, reckless, and "intentionally misleading" because, as Swanger knew or should have known, the prosecution history contained significant amendments showing that PODS's infringement claim was presumptively

---

[30] PODS, Inc. v. Porta Stor, Inc., 484 F.3d at 1367-68.

[31] PODS, Inc. v. Porta Stor, Inc., 484 F.3d at 1371.

[32] PODS, Inc. v. Porta Stor, Inc., 484 F.3d at 1371.

[33] At a July 16, 2007, status conference, Porta Stor stated that (1) the return of PODS's bond deprived the court of jurisdiction to grant Porta Stor relief for the wrongful injunction, and (2) Porta Stor intended to file a separate action seeking damages and equitable relief under Florida law for the wrongful injunction.  Cf. Doc. 16 at 10.

barred by prosecution history estoppel; (2) that although PODS knew or should have known the falsity of Swanger's misrepresentations and owed an affirmative duty to correct the misrepresentations (particularly in ex parte TRO proceedings), PODS either intentionally or with gross negligence adopted the misrepresentations; (3) that PODS's counsel Ann Mason "intentionally" and in "bad faith" failed to correct Swanger's misrepresentations and inform the court of the amendments to the patent application; (4) that as a result of the misconduct of Swanger, PODS, and PODS's counsel, the court in the related action was persuaded to impose a wrongful TRO and preliminary injunction, which caused the plaintiffs more than sixteen million dollars in damage; and (5) that the wrongful TRO and preliminary injunction unjustly enriched Porta Stor's competitor PODS.

The parties are not diverse (Doc. 1 ¶¶ 2-4), the plaintiffs concede that both counts of the amended complaint arise under Florida law,[34] and the amended complaint fails to disclose that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.[35]  Accordingly, a November 27, 2007, order (Doc. 17) directs the plaintiffs to show cause why this action should not be dismissed for

---

[34] See Doc. 12 at 5 ("Florida courts find that actual damages can be awarded in cases where a party seeks an injunction in bad faith.") (citing Lotenfoe v. Pahk, 747 So. 2d 422 (Fla. Dist. Ct. App. 1999); Doc. 16 at 6-7 (same); Doc. 12 at 10 (citing Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So. 2d 1018 (Fla. 1989); Doc. 12 at 8 ("The nexus to the [related action] is the anchor that ties the claims before this court to the jurisdiction of this court.  The Court can, then, apply Florida law."); Doc. 16 at 9 (same); Doc. 12 at 9 ("The Plaintiffs rely on [the related action] before the District Court to provide jurisdiction, in that the matters arose from, and is regarding the actions taken under the patent statute, 35 U.S.C. § 285.  The damages sought do not, however, flow from the patent statutes, but rather from the Florida case law."); Doc. 16 at 10-11 (same).

[35] See Franchise Tax Board of California v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983).

lack of subject matter jurisdiction. In response (Doc. 18), the plaintiffs contend that patent law jurisdiction under 28 U.S.C. § 1338 extends to the plaintiffs' state-law claims because the plaintiffs' right to recovery depends on the resolution of a substantial question of federal patent law.[36]

> The substantial question of federal law is whether the injunction [in the related action] was wrongful. At the heart of that issue is whether the patent was infringed or not infringed. In this case, federal patent law provided for the injunction which eventually was found to be wrongful. . . . In the case at bar the Plaintiffs will have to prove that there was an injunction based on claims of patent infringement, and that the patent was not infringed. Doc. 18 at 4.

In short, the plaintiffs contend that they must prove that the injunction was wrongful,[37] which in turn requires proof that the accused device did not infringe the '062 patent.[38]

However, the accused device's non-infringement of the '062 patent was conclusively resolved (as between the parties and their privies) in favor of Porta Stor in

---

[36] See U.S. Valves, Inc. v. Dray, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (patent law jurisdiction under 28 U.S.C. 1338 "'extends only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.'" (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988)); Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P., 504 F.3d 1262, 1272 (Fed. Cir. 2007) (state-law claim may arise under federal law if "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.") (quoting Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

[37] See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1054 (2d Cir. 1990) ("A party has been "wrongfully enjoined" under Fed. R. Civ. P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act."); Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir. 1994) (same); cf. Qualcomm, Inc. v. Motorola, Inc., 185 F.R.D. 285, 288 (S.D. Cal. 1999).

[38] The plaintiffs cite PODS's petition for certiorari as proof that the patent infringement issue remains unresolved. See Doc. 18 at 2 ("Defendant Pods, Inc. has sought certiorari in the Supreme Court of the United States, in an effort to reverse the Federal Circuit's decision. The issue of patent infringement, then, is not settled . . . .").

- 17 -

the related action[39] and is not in dispute.  Accordingly, the plaintiff's state-law claims require the resolution of no substantial and disputed question of patent infringement. For this reason, and because the plaintiffs allege no other basis for original jurisdiction, the action is **DISMISSED** for lack of subject matter jurisdiction.  PODS's motion (Doc. 10) to dismiss the amended complaint for failure to state a claim is **DENIED AS MOOT**, and PODS's motion (Doc. 14) for sanctions is **DENIED**.  The Clerk is directed to terminate any pending motion and close the case.

ORDERED in Tampa, Florida, on March 21, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[39] The history of the related action recounted above demonstrates the presence of all of the requirements for the application of collateral estoppel.  The (1) identical patent infringement issue (2) was actually litigated in the related action, (3) the determination of the issue in the related action was a necessary part of the judgment, and (4) the parties had a full and fair opportunity to litigate the issue.  See Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998).  A court may raise the issue of collateral estoppel sua sponte if the prior action was brought before a court in the same district.  See Boone v. Kurtz, 617 F.2d 435, 436 (5th Cir. 1980).  PODS's petition for certiorari did not limit the preclusive effect of the Federal Circuit's decision.  See Jaffree v. Wallace, 837 F.2d 1461, 1467 (11th Cir. 1988) ("'The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal.'") (quoting 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4433, at 308 (1981 & Supp. 1987); Pharmacia & Upjohn Co. v. Mylan Pharm., Inc., 170 F.3d 1373, 1381 (Fed. Cir. 1999) (same).  In any event, PODS's petition for certiorari was denied on November 13, 2007.  See PODS, Inc. v. Porta Stor, Inc., 128 S. Ct. 618 (2007).